IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| FRANCIS H. AZUR, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 06-1088 |
| | ) |
| CHASE BANK USA, NATIONAL | ) |
| ASSOCIATION, f/k/a Chase Manhattan | ) |
| Bank, USA, National Association, as | ) |
| successor by merger with Bank One, | ) |
| Delaware, National Association, f/k/a First | ) |
| USA Bank, N.A., | ) |
| Defendant. | ) |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the defendant's motion for summary judgment (Document No. 36) be granted. In light of that recommendation, the defendant's motion for judgment on the pleadings as to Count I of the amended complaint (Document No. 57) should be dismissed as moot.

II. Report

Presently before the Court is a motion for summary judgment submitted by the defendant, Chase Bank USA, National Association ("Chase").[1] For reasons discussed below, Chase's motion for summary judgment should be granted.

In a Report and Recommendation dated October 24, 2008, it was recommended that

---

1. Chase was formerly known as Chase Manhattan Bank, USA, N.A., as successor by merger with Bank One, Delaware, N.A., f/k/a First USA Bank, N.A.

Chase's motion for summary judgment be granted as to Counts II and III of the amended complaint and denied in all other respects (the "R&R"). On November 10, 2008, the parties filed objections to the R&R, and on that date -- prior to a final ruling on its motion for summary judgment -- Chase moved for judgment on the pleadings as to Count I of the amended complaint. The Court extended the deadline for filing responses to objections to December 4, 2008, and on that date, the parties filed responses to objections, and the plaintiff filed a brief opposing Chase's motion for judgment on the pleadings. At the parties' requests, we allowed them to submit reply briefs. Having reviewed the parties' submissions, we file this Supplemental Report and Recommendation.

The plaintiff, Francis H. Azur, filed a three-count amended complaint, alleging that Chase violated the Truth in Lending Act, 5 U.S.C. §§ 1601, et seq. ("TILA") (Counts I and II) and was negligent in failing to detect and prevent fraud on a credit card account opened in his name (Count III). The plaintiff seeks to recover in excess of $1,025,000 that was misappropriated from him by his former personal assistant through use of his Chase credit card, and enjoin Chase from collecting the misappropriated amounts and submitting adverse credit reports on his account to credit reporting agencies.

The record shows that in 1987, the plaintiff opened a credit card account with First USA Bank, N.A., a predecessor to Chase, and he received a credit card for the account.[2] Through a series of mergers, Chase owns the credit card account.[3] While the plaintiff recalls opening the

---

2. See, amended complaint at ¶ 6 and defendant's answer thereto. By stipulation dated May 21, 2007, the parties agreed that the defendant's answer to the original complaint would apply to the amended complaint, as the complaint was amended to correct the name of the defendant.

3. See, defendant's statement of material facts at ¶ 2 and plaintiff's response thereto.

credit card account with First USA Bank, N.A., he was not aware he had a Chase credit card.[4] The plaintiff was the sole cardholder listed on the account and its only authorized user.[5] Chase cannot identify how many cards were issued for the account, but all cards were issued in the name of the plaintiff.[6]

In 1993, the plaintiff founded ATM Corp., which was in the business of managing settlement services for large national lenders, and during the relevant time period -- 1999 to 2006, the plaintiff was the President and C.E.O. of ATM Corp.[7] On or about July 7, 1997, ATM Corp. hired Michele Vanek to be the plaintiff's personal assistant.[8] Vanek's responsibilities included opening the plaintiff's personal bills, balancing his bank accounts and preparing and presenting checks for him to sign.[9]

The plaintiff arranged to have his bills sent to a post office box in Coraopolis, PA ("P.O. Box 1023").[10] Chase asserts that from January 1998 onward, it mailed monthly statements for the credit card account to P.O. Box 1023.[11] Michele Vanek picked up the plaintiff's mail each day from P.O. Box 1023, and she opened the bills, wrote checks for them, presented the checks to the

---

4. See, plaintiff's counter-statement of material facts at ¶¶ 92-93 and defendant's response thereto.

5. Id. at ¶ 100.

6. Id. at ¶ 104.

7. See, defendant's statement of material facts at ¶¶ 3-4 and plaintiff's response thereto.

8. Id. at ¶ 5.

9. Id. at ¶ 6.

10. Id. at ¶¶ 9-10.

11. See, defendant's statement of material facts at ¶ 12.

plaintiff for his signature and mailed the payments.[12] Vanek also was responsible for balancing the plaintiff's bank accounts and reconciling the bank statements with the checks written.[13]

Vanek reported to the plaintiff each month that she had reviewed account statements and balanced them to the checks he had signed.[14] The plaintiff compared the dollar amount due on his credit card bills to the amount of the checks prepared by Vanek[15]; however, the plaintiff did not review his credit card statements each month, as he delegated that duty to Vanek.[16] The plaintiff did not have anyone supervise Vanek on his behalf with respect to his accounts, and no one, other than Vanek, reviewed his credit card statements.[17]

During her employment with the plaintiff, Vanek obtained possession of one of the predecessor cards to the Chase credit card, either by stealing it from a portfolio that was maintained in the plaintiff's desk, or by some other means.[18] From November 1999 through March 2006, Vanek began using the Chase credit card to withdraw, as a cash advance, between $200 and $700 approximately twice a day.[19] Each cash advance transaction included a fee of approximately $2.00, as well as a finance charge that corresponded to the cash advance (ranging from $4.00 for a

---

12. Id. at ¶¶ 13 and 15 and plaintiff's response thereto.

13. Id. at ¶ 16.

14. See, plaintiff's counter-statement of material facts at ¶ 85 and defendant's response thereto.

15. Id. at ¶ 86.

16. See, defendant's statement of material facts at ¶ 21.

17. Id. a ¶¶ 26-27.

18. See, plaintiff's counter-statement of material facts at ¶ 105 and defendant's response thereto.

19. Id. at ¶107.

4

$100.00 cash advance to $21.06 for a $700 advance).[20] If there was a question about a charge on the plaintiff's credit card accounts, it was Vanek, not the plaintiff, who called the credit card companies, as the plaintiff gave her the card number and information she would need to discuss routine questions.[21] Chase asserts it also has a letter dated July 20, 1999, purportedly from the plaintiff, which authorizes one of its predecessors, First USA, to release or discuss account information with Michele Vanek.[22]

At least 65 account statements with the fraudulent charges were sent to the plaintiff's mailing address. Vanek paid the monthly statements on the account by preparing checks, or making on-line payments from the plaintiff's Dollar Bank checking and savings accounts.[23] She made check payments to Chase by forging the plaintiff's signature.[24] The plaintiff asserts that Vanek's charged cash advances and purchases to the account were done without his consent, authorization or benefit.[25] He estimates that the disputed charges on the account total at least $1,025,569.60.[26]

On or about March 7, 2006, ATM Corp. and the plaintiff learned that Vanek was misappropriating money from the Chase account upon discovering a letter requesting a transfer of

---

20. Id. at ¶ 108.

21. See, defendant's statement of material facts at ¶¶ 22-23.

22. Id. at ¶ 24.

23. See, plaintiff's counter-statement of material facts at ¶ 109 and defendant's response thereto.

24. Id. at ¶ 110.

25. See, defendant's statement of material facts at ¶ 29 and plaintiff's response thereto.

26. Id. at ¶ 30.

5

funds from a checking account.[27] The matter was investigated, after which Vanek's employment was terminated.[28]

On or about March 8, 2006, the plaintiff advised Chase of Vanek's misconduct, and the account was closed.[29] On April 7, 2006, plaintiff's counsel sent registered letters to Chase, notifying it of the fraudulent use of the plaintiff's credit card and disputing all fraudulent transactions made by Vanek.[30] On or about April 21, 2006, the plaintiff, through counsel, returned to Chase an executed Affirmation of Unauthorized Use.[31] Chase has not reimbursed the plaintiff for amounts he claims were misappropriated from his account, and it demands payment of sums owed on the account.[32]

In Count I of the amended complaint, brought under TILA, the plaintiff contends that Chase violated Regulation Z (which interprets TILA), 12 C.F.R. § 226.13(b)(1), by attempting to collect disputed amounts owed on the account despite knowing of Vanek's unauthorized use of it. In Count II, Chase is said to have violated 15 U.S.C. § 1666 of TILA by making adverse credit reports on the plaintiff for failing to pay disputed amounts on the account. In Count III, the plaintiff contends that Chase was negligent in failing to detect and notify him of fraudulent activity on the account. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332.

---

27. See, plaintiff's counter-statement of material facts at ¶ 138 and defendant's response thereto.

28. Id. at ¶ 139.

29. Id. at ¶ 140.

30. Id. at ¶ 141.

31. Id. at ¶ 142.

32. See, amended complaint at ¶¶ 23-24 and defendant's answer thereto.

Chase has moved for summary judgment on all of the plaintiff's claims. Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004). As previously mentioned, it was recommended in the R&R that Chase's motion for summary judgment be granted as to Counts II and III, but denied as to Count I. In this Supplemental Report, we find that summary judgment is also appropriate on Count I.

Count I is brought under 15 U.S.C. § 1643 of TILA, which limits the liability of a credit card holder for the unauthorized use of a credit card.[33] A cardholder's maximum liability under § 1643 is $50, 15 U.S.C. § 1643(a)(1)(B), but limits on liability under § 1643 apply only to the "unauthorized use" of a credit card. TILA defines the term "unauthorized use" as: "use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit." Id. § 1602(o); also see, 12 C.F.R. § 226.12(b)(1) n.22.

In moving for summary judgment on Count I, Chase argues, among other things, that Michele Vanek had apparent authority to use the plaintiff's credit card. Having reexamined the issue following issuance of the R&R, we agree.[34]

---

33. It is provided in 15 U.S.C. § 1643(a)(1) that: a cardholder is liable for the unauthorized use of a credit card only if – (A) the card is an accepted credit card; (B) the liability is not in excess of $50; (C) the card issuer gives adequate notice to the cardholder of the potential liability; (D) the card issuer has provided the cardholder with a description of a means by which the card issuer may be notified of loss or theft of the card...; (E) the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise; and (F) the card issuer has provided a method whereby the user of such card can be identified as the person authorized to use it.

34. In the R&R, we stated that based on the parties' actions, the issue of whether Michele Vanek
(continued...)

The issue of whether apparent authority exists must be determined under state or other applicable law, such as agency law. DBI Architects v. American Express Travel Related Services, 388 F.3d 886, 889-90 (D.C.Cir. 2004), citing 12 C.F.R. pt. 226, Supp. I, at 418, and Towers World Airways Inc. v. PHH Aviation Sys. Inc., 933 F.2d 174, 176-77 (2d Cir. 1991). Under rules of agency law, "apparent authority arises from the 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him." DBI Architects, 388 F.3d at 890, quoting Restatement (Second) of Agency, § 27, at 103 (1958).

Similarly, under Pennsylvania law, apparent authority is defined as "that authority which, although not actually granted, the principal knowingly permits the agent to exercise, or holds him out as possessing." In Re Mushroom Transp. Co., 382 F.3d 325, 345 (3d Cir. 2004) (citing cases). Our Court of Appeals has stated:

> Apparent authority can exist only to the extent that it is reasonable for the third party dealing with the agent to believe the agent is authorized. The test for determining whether an agent possesses apparent authority is whether a man of ordinary prudence, diligence and discretion would actually believe that the agent possessed the authority he purported to exercise.

Id. (citation omitted).

---

(...continued)
had apparent authority to use the account was a question for the trier of fact. In objecting to this finding in the R&R, Chase argued that instead of focusing on the plaintiff's conduct in analyzing the issue of apparent authority, we focused too much on its acts to ascertain if it could have prevented Ms. Vanek's misconduct. As discussed in this Supplemental Report, the proper inquiry in assessing whether apparent authority exists in this case is whether it was reasonable for Chase to believe that Ms. Vanek possessed the authority to use the Chase account. See, In Re Mushroom Transp. Co., 382 F.3d 325, 345 (3d Cir. 2004). On this question, we find it was reasonable for Chase to believe that Vanek had apparent authority to use the account.

Generally, questions of apparent authority are factual issues which a jury should determine. Gizzi v. Texaco, Inc., 437 F.2d 308, 310 (3d Cir. 1971). Indeed, whether a principal-agent relationship exists is usually a question of fact for the jury; however, where the facts giving rise to the relationship are not in dispute, the issue may be decided by the Court. Constitution Bank v. DiMarco, 836 F.Supp. 304, 307 (E.D.Pa. 1993), aff'd., 27 F.3d 556 (3d Cir. 1994). Also see, DBI Architects, 388 F.3d at 890 ("The existence of apparent authority is a question of fact that should normally be left to the jury.... However, a principal may be estopped from denying apparent authority if the principal intentionally or negligently created an appearance of authority in the agent, on which a third party relied in changing its position"), citing Restatement (Second) of Agency, § 8B, at 38-40.

Chase insists that the plaintiff vested Michele Vanek with apparent authority to use the account, because: (1) for a period of almost seven years, the bills for the account were paid each month from the plaintiff's Dollar Bank account without objection, and (2) the plaintiff failed to review the billing statements sent to him by Chase, such that he never disputed any charges until almost seven years after Vanek's misconduct began. Chase correctly asserts that in cases having similar facts, several Circuit Courts of Appeal have held that a cardholder creates apparent authority in a third party to incur the charges.

For instance, in Minskoff v. Am. Express Travel Related Servs. Co., 98 F.3d 703, 709-10 (2d Cir. 1996), the Second Circuit Court of Appeals held that "a cardholder's failure to examine credit card statements that would reveal fraudulent use of the card constitutes a negligent omission that creates apparent authority for charges that would otherwise be considered unauthorized". In so holding, the Minskoff Court relied on New York banking law, which provides that consumers are

9

obligated to "exercise reasonable care and promptness" in examining bank statements "to discover [any] unauthorized [use]". Id. at 709, quoting N.Y. U.C.C. § 4-406(1).

In DBI Architects, 388 F.3d at 886, the District of Columbia Circuit Court of Appeals opined that nothing in the law of agency supports the view that a cardholder's failure to inspect monthly billing statements creates apparent authority for its employee to use its credit card account. As explained in DBI Architects, "the consequence of the cardholder's failure to examine its billing statements is that it may not be able to take advantage of the opportunity Congress provided under § 1666 to correct a billing error, not that it forfeits protections against liability for unauthorized use under § 1643. Id. at 893.

Still, in DBI Architects, the Court held that a cardholder does create apparent authority in an employee to use its credit card account by repeatedly paying without protest all charges incurred by the employee after receiving notice of them from the card issuer. Id. at 893-94. The Court stated that "[b]y identifying apparent authority as a limit on the cardholder's protection under § 1643, Congress recognized that a cardholder has certain obligations to prevent fraudulent use of its card." Id. at 893. Thus, in DBI Architects, the Court opined:

> Where, as here, the cardholder repeatedly paid thousands of dollars in fraudulent charges for almost a year after monthly billing statements identifying the fraudulent user and itemizing the fraudulent charges were sent to its corporate address, no reasonable juror could disagree that at some point the cardholder led the card issuer reasonably to believe that the fraudulent user had authority to use its card.

Id. at 894.

A similar finding was made by the Second Circuit Court of Appeals in Carrier v. Citibank (South Dakota), N.A., 180 Fed. Appx. 296 (2d Cir. 2006). In Carrier, the Court relied on the

holdings in Minskoff and DBI Architects to find that a cardholder created apparent authority in her employee to incur disputed charges, stating:

> [I]t is undisputed that Carrier [the cardholder] did not review his credit card statements during a two-year period while continuing to pay his bills without protest and that Citibank made numerous efforts to verify the legitimacy of the charges during that time. In light of these facts, the district court did not err in holding that Carrier had created apparent authority [in his employee] to incur the charges.

180 Fed. Appx. at 297.

The above cases instruct that a cardholder cannot avoid liability for a user's fraudulent charges where monthly credit card bills on the account are repeatedly paid without protest, because such payments lead a card issuer to reasonably believe that the user has authority to incur the charges. See, DBI Architects, 388 F.3d at 893-94; and Carrier, 180 Fed. Appx. at 297. In addition, under Second Circuit law, "[a] cardholder's failure to review credit card statements that would reveal fraudulent use of the card constitutes a negligent omission that creates apparent authority for charges that would otherwise be considered unauthorized". Minskoff, 98 F.3d at 709-10; accord, Carrier, 180 Fed. Appx. at 297.

Comparing the facts in this case to those above compels a finding that the plaintiff created apparent authority in Michele Vanek to incur the disputed charges. In DBI Architects, a fraudulent user charged a total of $134,810.40 to the cardholder's account over a ten month period, during which time the card issuer sent the cardholder ten monthly billing statements listing the unauthorized charges. 388 F.3d at 888. The fraudulent user paid the monthly charges with the cardholder's checks made payable to the card issuer. Id. The cardholder was unaware of the fraudulent charges and failed to inspect the monthly billing statements on the account, yet the

11

Court in <u>DBI Architects</u> held that the cardholder clothed the fraudulent user with apparent authority to use the account. <u>Id.</u> Indeed, after thousands of dollars in fraudulent charges were repeatedly paid for almost a year on monthly billing statements sent to the cardholder's address, the Court stated: "no reasonable juror could disagree that at some point the cardholder led the card issuer reasonably to believe that the fraudulent user had authority to use its card." <u>Id.</u> at 894.

In <u>Carrier</u>, as detailed by the district court, a fraudulent user incurred $120,520 in charges on the cardholder's account for goods purchased and cash advances obtained during a 25 month period. 383 F.Supp.2d 334, 336 (D.Conn. 2005). During that time, the card issuer mailed monthly billing statements on the account, but the fraudulent user never showed them to the cardholder, and the cardholder never asked to see them. <u>Id.</u> The fraudulent charges were paid regularly on checks issued on bank accounts of the cardholder. <u>Id.</u> Based on such facts, the Court of Appeals in <u>Carrier</u> affirmed the district court's finding that the cardholder created apparent authority in the fraudulent user to incur the charges. 180 Fed. Appx. at 297.

In <u>Minskoff</u>, a fraudulent user incurred charges in excess of $250,000 on several credit card accounts during a 19 month period, during which time she paid the monthly billing statements with the cardholder's checks made payable to the card issuer. 98 F.3d at 706-07. During that time, at least 28 monthly billing statements documenting the fraudulent charges were mailed to the cardholder, none of which he examined. <u>Id.</u> The Court in <u>Minskoff</u> opined that the cardholder's omissions in failing to review billing statements created apparent authority for the fraudulent user to continue using the accounts and paying the monthly statements with forged checks, thereby fortifying the card issuer's impression that nothing was amiss with the accounts. <u>Id.</u> at 710.

Here, the record shows that during a period in excess of six years, Michele Vanek incurred

fraudulent charges of more than $1,025,000 on the plaintiff's account. During that time, Chase sent at least 65 billing statements to the plaintiff's mailing address. In each instance, Vanek paid the monthly statement by preparing checks, or making on-line payments from the plaintiff's Dollar Bank checking and savings accounts. Tellingly, the plaintiff failed to review his credit card statements, as he delegated that duty to Vanek alone. The plaintiff also gave Vanek the credit card number and all information she needed to discuss routine questions on the account, so it was Vanek, not the plaintiff, who called Chase if there was a question about a charge.

Based on the case law recited above, the plaintiff vested Michele Vanek with apparent authority to use the account, as the repeated payment of billed charges led Chase to reasonably believe the charges were authorized. Furthermore, the plaintiff's failure to review his account statements and his lax supervision of Vanek, in whom he delegated authority to review his statements, prepare checks on the account, and discuss routine questions with the card issuer, constituted a negligent omission that created apparent authority in Vanek to incur the charges.[35]

---

35. The plaintiff argues that Chase should have known that Vanek's charged cash advances were not authorized because: (1) the transaction pattern on the Chase account changed dramatically in 1999 from almost no activity to multiple cash advances a week, and (2) Chase never verified with the plaintiff that such transactions were authorized. As to these arguments, Chase asserts that because the charges on the account were paid every month without protest, it had no reason to be suspicious of fraud, and it would not have made new credit available every month had the previous months charges not been validated by payment. In addition, Chase uses a neutral network called FALCON, as well as other authorization methods, to recognize suspicious activity on accounts. During the time period covering Vanek's misconduct, there were three transactions on the Chase account that triggered Chase's fraud strategies; those occurred on April 16, 2004, April 23, 2004, and May 14, 2005. In each instance, Chase made telephone calls to the telephone number on record for the account, and twice it left automated messages on an answering machine. However, the plaintiff never responded to Chase's phone messages. Instead, the charges on the account were paid each month without protest. The plaintiff also asserts that Chase should have been suspicious of fraud because on November 20, 1998, Chase placed a priority memo on the account which identified the cardholder as male, but on April 26,
(continued...)

As discussed above, in assessing whether apparent authority exists, the proper inquiry is whether it was reasonable for Chase to believe that Michele Vanek possessed the authority to use the account. See, In Re Mushroom Transp. Co., 382 F.3d at 345. On this issue, we find it was reasonable for Chase to believe that Vanek had apparent authority to use the credit card account. As such, Chase's motion for summary judgment on Count I should be granted.[36]

In Count II, the plaintiff contends that Chase violated § 1666(a) of TILA, 15 U.S.C. § 1666(a), by making adverse reports on him for failing to pay disputed amounts on the account, even though it received his written notice disputing all fraudulent charges. Section 1666(a) of TILA sets forth procedures a creditor must follow to resolve alleged billing errors after it receives a consumer's timely, written notice of such an error.[37]

---

(...continued)
2004, Chase received an inbound call from the purported "primary cardholder" who was female. In this regard, Chase avers that banks do not use voice recognition or gender identification as a means of security identification, a fact which both its expert and the plaintiff's expert agree. See, Chase's expert's report at p. 13 (Tab E-1 to Chase's Appendix) and plaintiff's expert's deposition at pp. 88-89 (Tab C to Chase's Appendix). Chase also asserts that even if there was a question about the caller's gender, it had a letter in its files from the plaintiff dated July 20, 1999, which permitted it to speak to Vanek about the account (Tab O to Chase's appendix). Based on the foregoing, we agree with Chase that its actions do not raise a material issue as to whether apparent authority exists in this case.

36. With respect to TILA § 1643, the Third Circuit Court of Appeals has held that a card issuer cannot claim a right to equitable indemnification under § 1643, because it "imposes liability only upon the cardholder" and "does not obligate [a card issuer] to reimburse its cardholders' accounts". Sovereign Bank v. BJ's Wholesale Club, 533 F.3d 162, 175 (3d Cir. 2008). The Court stated that "TILA § 1643 does not impose any obligation on issuers of credit cards to pay the costs associated with unauthorized or fraudulent use of credit cards. It simply limits the liability of cardholders, under certain circumstances, to a maximum of $50 for unauthorized charges. Indeed, § 1643 does not address, nor is it even concerned with, the liability of an issuer or any other party other than the cardholder for unauthorized charges on a credit card." Id.

37. In relevant part, 15 U.S.C. § 1666(a) provides: "If a creditor, within sixty days after having
(continued...)

Chase argues it is entitled to summary judgment on Count II, because the plaintiff failed to send it timely, written notice which properly notified it of the specific charges and amounts he was disputing as § 1666(a) requires. We agree.

To trigger a creditor's obligation to investigate and verify a disputed billing statement, a consumer must send it written notice of the alleged error. Dawkins v. Sears Roebuck And Co., 109 F.3d 241, 243 (5th Cir. 1997). A consumer's written notice must be received by the creditor within 60 days of the creditor's transmission of the statement containing the alleged error. Id., citing 15 U.S.C. § 1666(a). To the extent possible, a consumer's written notice should indicate "the type, date, and amount of the error." 12 C.F.R. § 226.13(b)(3).

The record shows that on April 7, 2006, the plaintiff, through his counsel, sent a registered letter to Chase, notifying it of the fraudulent use of the plaintiff's credit card and disputing all fraudulent transactions made by Vanek.[38] On or about April 21, 2006, the plaintiff, through his

---

(...continued)
transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives... a written notice ... from the obligor ... which ... (1) sets forth or ... enables the creditor to identify the name and account number ... of the obligor, (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and (3) sets forth the reasons for the obligor's belief ... that the statement contains a billing error, the creditor shall ... (A) not later than thirty days after the receipt of the notice, send a written acknowledgment thereof to the obligor ..., and (B) not later than two complete billing cycles of the creditor (in no event later than 90 days) after the receipt of the notice and prior to taking any action to collect the amount ... either – (i) make appropriate corrections in the account .... or (ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account ... was correctly shown in the statement ...

38. See, plaintiff's counter-statement of material facts at ¶ 141 and defendant's response thereto.

counsel, returned to Chase an executed Affirmation of Unauthorized Use.[39] These notices appear to be timely, as Chase does not dispute receiving them within 60 days of its corresponding billing statement which the parties agree covers the period of February 7, 2006 through March 6, 2006.[40] The plaintiff also sent a notice to Chase on May 17, 2006, apprising it that any transactions to the account on or after October 21, 2001 were unauthorized and disputing all charges[41]; however, that notice was untimely for purposes of § 1666(a), as it was sent more than 60 days after Chase's aforesaid billing statement at issue.

With respect to the timely written notices sent to Chase, neither notice was sufficient to trigger Chase's duties under § 1666(a). For instance, the April 7, 2006 letter to Chase did not satisfy the requirements of § 1666(a)(2), as it did not specify a billing error on Chase's statement and the amount of such billing error.[42] Similarly, the plaintiff's Affirmation of Unauthorized Use did not specify a billing error and the amount of such billing error for the period of February 7, 2006 through March 6, 2006 which pertained to Chase's statement.[43] Since the plaintiff did not

---

39. Id. at ¶ 142.

40. Id. at ¶ 144.

41. Id. at ¶ 143.

42. See, Chase's Appendix at Tab X, Exhibit 1.

43  See, Chase's Appendix at Tab X, Exhibit 2. We note that in the plaintiff's Affirmation of Unauthorized Use, three transactions were listed as follows:

| Date | Amount | Merchant |
|------|--------|----------|
| 01/13/06 | 10,000.00 | Returned Payment |
| 02/21/06 | 20,000.00 | Returned Payment |
| 3/22/06 | 28,717.38 | Fraudulent Transactions. |

Of these transactions, only the one dated 02/21/06 falls within Chase's billing statement at issue, and it reflects Chase's receipt of a payment on the account. See, Chase's Appendix at Tab A-2 (listed as Chase 00357-00360.

provide Chase with timely written notice for purposes of § 1666(a), summary judgment on Count II should be granted.

In Count III, the plaintiff claims Chase is liable for negligence, as it breached its duty to protect his account from fraudulent activity. Chase moves for summary judgment on Count III, arguing that the plaintiff's negligence claim is barred by the "economic loss doctrine". We agree.

Under the economic loss doctrine, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 175 (3d Cir. 2008), quoting Adams v. Copper Beach Townhome Communities, 816 A.2d 301, 305 (Pa.Super. 2003). Here, the damages sought in the negligence claim are "all payments collected by Chase for money misappropriated and purchases made through the fraudulent use" of the plaintiff's account, as well as damages for "Chase's unlawful submission of adverse credit reports concerning [his] credit status".[44]

As to payments collected by Chase resulting from the fraudulent use of the account, it is clear that the plaintiff seeks to recover economic losses which are unaccompanied by physical or property damage. Indeed, in construing the economic loss doctrine, money lost through unauthorized credit card charges is deemed a purely economic loss. Sovereign Bank v. BJ's Wholesale Club, Inc., 395 F.Supp.2d 183, 204 (M.D.Pa. 2005), aff'd., 533 F.3d 162 (3d Cir. 2008).

The plaintiff also seeks damages for Chase's alleged unlawful submission of adverse credit reports on him. Under Pennsylvania law, "loss of credit, standing alone, is not proof of damage, unless the loss of credit connects itself with some tangible pecuniary loss of which the loss of credit was the cause." Johnson v. Four States Enterprises, Inc., 355 F.Supp. 1312, 1318 (E.D.Pa.

---

44. See, request for relief in Count III of amended complaint.

1972), aff'd., 495 F.2d 1368 (3d Cir. 1974). Here, the plaintiff has proffered no evidence that he suffered a loss of credit or a damaged credit report card due to Chase's acts. In fact, the plaintiff testified at his deposition that he was never denied credit because of any report issued by Chase.[45]

Having failed to show that he suffered physical or property damage due to Chase's alleged negligence, the plaintiff's negligence claim is barred by the economic loss doctrine. Thus, Chase is entitled to summary judgment on Count III.

Therefore, for reasons discussed above, it is recommended that the defendant's motion for summary judgment (Document No. 36) be granted. In light of that recommendation, the defendant's motion for judgment on the pleadings as to Count I of the amended complaint (Document No. 57) should be dismissed as moot.

Within thirteen (13) days of being served with a copy, any party may serve and file written objections to this Supplemental Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                        Respectfully submitted,

                                        s/ROBERT C. MITCHELL
                                        United States Magistrate Judge

Dated: January 7, 2009

---

45. See, Chase's Appendix at Tab B, p. 146.